ANDREW MOSS ET AL. *v.* BRIAN FOSTER ET AL.
(AC 25116)

Flynn, C. J., and McLachlan and Pellegrino, Js.

Argued February 7—officially released July 4, 2006

*John B. Farley*, with whom were *Gerald L. Garlick* and, on the brief, *Lawrence P. Weisman*, for the appellants (plaintiffs).

*Eileen M. Burger*, with whom was *Mark A. Rubenstein*, for the appellees (defendants).

*Opinion*

McLACHLAN, J. This is an action to enforce certain deed restrictions on property owned by the defendants, Brian Foster and Stephanie Foster. The plaintiffs, Andrew Moss and Sharon Moss, appeal from the judgment of the trial court rendered following the granting of the defendants' oral motion to dismiss for failure to make out a prima facie case. Specifically, the plaintiffs claim that the court (1) applied an incorrect legal standard in granting the defendants' motion to dismiss under Practice Book § 15-8[1] and (2) improperly failed

[1] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

to conclude that the plaintiffs presented sufficient evidence to establish a prima facie case. The defendants claim, as an alternate ground for affirmance of the court's judgment, that the plaintiffs do not have standing to enforce the restrictions contained in the defendants' deed. We conclude that the court applied an incorrect legal standard in granting the defendants' motion and that the plaintiffs did establish a prima facie case as to the defendants' violation of the restrictions in the defendants' deed. We also conclude that, at that stage of the proceedings, the allegations of the complaint and the evidence presented by the plaintiffs were sufficient to establish that the plaintiffs were the proper parties to seek enforcement of the restrictions in the defendants' deed. Accordingly, we reverse the judgment of the trial court.

The following evidence was submitted at trial.[2] The plaintiffs are the owners of 7 Bluewater Hill South, a lot in the Bluewater Hill subdivision in Westport. They acquired their property by warranty deed recorded on December 15, 2000. The legal description of their property contains the language: "Together with the benefit of restrictions by Crane Haussamen dated 12/3/51 and recorded in Volume 105 at Page 359 of the Westport Land Records." The defendants own an adjoining lot in the subdivision, 9 Bluewater Hill South, which is

---

[2] We note that the trial exhibits have been lost, through no fault of counsel. The parties attempted to reconstruct the exhibits for our review. Despite their best efforts, some of the original exhibits could not be duplicated. Trial witnesses made markings on certain maps and aerial photographs to identify areas in question. Those markings are not depicted in the re-created exhibits. Although the original exhibits undoubtedly would have been helpful, we conclude that their availability did not make a material difference in the outcome of the appeal due to the other exhibits and the transcript. See *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 2 Conn. App. 322, 325 n.5, 479 A.2d 249 (1984), rev'd in part on other grounds, 199 Conn. 683, 508 A.2d 438 (1986); see also *Stern & Co.* v. *International Harvester Co.*, 146 Conn. 42, 46–47, 147 A.2d 490 (1958).

located downhill and to the east of the plaintiffs' property. The defendants acquired their property by warranty deed recorded on January 24, 1996. The legal description of their property contains the language: "Said premises are conveyed subject to the following . . . Restrictions as contained in agreement by and between Crane Haussamen and Hudson Nut Products, Inc. dated December 3, 1951 and recorded in Volume 105 at Page 359 of the Westport Land Records."

The plaintiffs' lot and the defendants' lot have views of Long Island Sound. The restrictions referenced in the parties' deeds are the restrictions that the plaintiffs seek to enforce in the present action.[3] In their amended complaint, the plaintiffs alleged that the restrictions at issue benefit their property by ensuring an unobstructed view of Long Island Sound and that the defendants,

---

[3] The restrictions recorded in volume 105 at page 359 of the Westport land records are as follows:

"1. That for a distance of seventy (70) feet Southerly of my Northerly line, there shall be no planting restrictions.

"2. That from a point seventy (70) feet Southerly of my Northerly line to a point one hundred (100) feet Southerly of my Northerly line existing shrubs and bushes or others that may be planted in substitution for the existing shrubs and bushes may be maintained at their present height or may be allowed to grow to a height of seven (7) feet above the ground level of my Westerly line, whichever shall in each instance be greater; and that existing trees or others that may be planted in substitution for the existing trees may be maintained; that the willow trees along my westerly line shall be removed by me on or before June 1, 1952; and that no other trees, shrubs or bushes shall be planted and allowed to grow higher than seven (7) feet above the ground level of my Westerly line.

"3. That from a point one hundred (100) feet Southerly of my Northerly line to a point one hundred thirty-three (133) feet Southerly of my Northerly line, existing shrubs or bushes or others that may be planted in substitution for the existing shrubs and bushes may be maintained at their present height or may be allowed to grow to [the] height of the floor of the second story of the house on the premises whichever shall in each instance be greater; and that existing trees or others that may be planted in substitution for the existing trees may be maintained; that the willow trees along my Westerly line shall be removed by me on or before June 1, 1952; and that no other trees, shrubs or bushes shall be planted and allowed to grow higher than the floor of the second story of the house on the premises."

whose property is subject to those restrictions, are in violation of the restrictions and illegally have obstructed the plaintiffs' view.

In addition to the deeds in the parties' chains of title and the restrictions at issue, the plaintiffs submitted aerial photographs from 1934, 1958, 1975 and 1990, a 2004 assessor's map, photographs of the view from the deck on the plaintiffs' house, deeds to other lots in the Bluewater Hill subdivision that also are encumbered by planting restrictions and a survey of the parties' properties prepared by Raymond Redniss, a professional land surveyor. Redniss testified that he plotted every tree in the restricted area in his survey, showing all of the trees that exceeded the applicable height limitations. Redniss also marked the 1934, 1958, 1975 and 1990 aerial map exhibits to show the restricted area as set forth in his survey. Andrew Moss testified that the trees in the restricted area on the defendants' property obstructed his view of Long Island Sound from the deck of his house. Photographs were submitted into evidence to support that testimony.

At the close of the plaintiffs' case, the defendants moved to dismiss the case. Ruling orally, the court concluded that "[t]he case has not been proven by a preponderance of the evidence" and granted the defendants' motion. This appeal followed.

I

Ordinarily, we would consider the defendants' alternate grounds for affirmance only after finding merit in the claim raised on appeal. "[O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 616, 872 A.2d 408 (2005). We therefore consider as a threshold

issue the defendants' claim that the plaintiffs lack standing to pursue their claims because they do not have the right to enforce the restrictions contained in the defendants' deed.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 793, 818 A.2d 69 (2003).

The plaintiffs claim that their standing to seek injunctive relief and monetary damages is not appropriately determined at this stage of the proceedings. They argue that it is sufficient that (1) they have alleged that the restrictions at issue benefit their property, (2) the restrictions are referenced in exhibit nine, which is the deed to their property, (3) they have alleged that the defendants' property is subject to the restrictions that benefit the plaintiffs' property and (4) the deed to the defendants' property, admitted into evidence as exhibit eight, indicates that the defendants' property is subject to those restrictions. The defendants, in their answer, have admitted that the deeds to the parties' properties referenced in the complaint contain the language as to the restrictions as alleged by the plaintiffs. Furthermore, the plaintiffs claim that their right to enforce the restrictions is one of the ultimate issues to be resolved after all of the facts have been determined and that the right of enforcement is not an issue of standing implicating the jurisdiction of this court.

We agree that, for purposes of a motion to dismiss for failure to make out a prima facie case, the plaintiffs

have presented sufficient evidence to preclude the granting of that motion on the ground of standing. From the allegations in the complaint and the evidence submitted during the plaintiffs' case-in-chief, they have demonstrated that they are entitled to set in motion the judicial machinery to determine whether the restrictions at issue can be enforced by them against the defendants. Whether they ultimately prevail on this claim will have to be determined after the case is concluded and the court issues its ultimate decision. Accordingly, we disagree with the defendants' alternate ground for affirmance.

II

We next turn to the plaintiffs' first claim on appeal, which is that the court applied an incorrect legal standard in granting the defendants' motion to dismiss under Practice Book § 15-8. Specifically, the plaintiffs argue that the court dismissed their case because it concluded that they failed to prove their allegations by a preponderance of the evidence. They assert that the court was obligated to apply a different legal standard, namely, whether they had provided sufficient evidence to establish a prima facie case. We agree.

A court's determination of the proper legal standard is a question of law subject to plenary review. *Fish* v. *Fish*, 90 Conn. App. 744, 754, 881 A.2d 342, cert. granted on other grounds, 275 Conn. 924, 883 A.2d 1243 (2005). Practice Book § 15-8 clearly provides in relevant part that a court may grant a motion to dismiss after the close of a plaintiff's case-in-chief if "the plaintiff has failed to make out a prima facie case. . . ." If a court applies a different standard, its judgment is subject to reversal. See *Thomas* v. *West Haven*, 249 Conn. 385, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 863 A.2d 735 (2005).

The court's decision, as contained in the signed transcript, indicates that the plaintiffs, in order to prevail, would have to show that any trees in the restricted area that are more than seven feet in height were not there in 1951 and were not planted in substitution for trees existing in 1951. The court stated: "It's a difficult thing to prove and certainly very difficult to prove by the preponderance of the evidence." With respect to the actual height of the trees, the court indicated: "They appear to be higher than seven feet tall, but they just appear that way. I don't know if that was even proven by a preponderance of the evidence." The court also questioned whether the willow trees on the westerly line, which were to be removed by Haussamen by June 1, 1952, were the only trees on that westerly line when the restrictions were recorded. The court stated: "So, that point has not been proven by a preponderance of the evidence. . . . So, the motion to dismiss . . . is granted. The case has not been proven by a preponderance of the evidence."

A review of the entire decision reveals that the court improperly applied a preponderance of the evidence standard rather than making a determination as to whether the plaintiffs failed to establish a prima facie case. The defendants do not argue to the contrary. Instead, they claim that the plaintiffs failed to raise this issue at trial and are, therefore, precluded from raising it for the first time on appeal. The defendants cite Practice Book § 60-5[4] in support of their argument.

The defendants, by oral motion made at the close of the plaintiffs' case-in-chief, moved to dismiss the case. In ruling on that motion, after the plaintiffs had presented their evidence, the court employed an improper

[4] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

legal standard. Practice Book § 15-8 explicitly provides that such a motion can be granted only if the plaintiffs failed to establish a prima facie case. When the court issued its ruling, judgment was rendered. See *Rosenfield* v. *Cymbala*, 43 Conn. App. 83, 93, 681 A.2d 999 (1996). It was not incumbent on the plaintiffs to anticipate and raise as an issue, during the presentation of their evidence, the possibility that the court would use an improper legal standard if the defendants moved to dismiss the case at the conclusion of that evidence. The plaintiffs did not raise the claim after judgment was rendered, but the defendants have cited no authority that would obligate the plaintiffs to do so.

Moreover, in determining the plaintiffs' second claim that they had submitted sufficient evidence to withstand a motion to dismiss pursuant to Practice Book § 15-8, we are obligated to employ the correct standard. See *Fish* v. *Fish,* supra, 90 Conn. App. 754. That standard, clearly, is to determine whether the plaintiffs failed to make out a prima facie case. Regardless of the legal standard used by the court in ruling on the motion, we will apply the appropriate standard as set forth in Practice Book § 15-8. We conclude that the court incorrectly applied the preponderance of the evidence standard in granting the defendants' motion to dismiss and that the court should have determined whether the plaintiffs failed to make out a prima facie case.[5]

### III

The plaintiffs next claim that the court improperly failed to conclude that they presented sufficient evidence to establish a prima facie case. We agree.

[5] We note that the plaintiffs did not request plain error review under Practice Book § 60-5 in their principal brief on appeal. The defendants argue that the plain error doctrine should not be considered by this court under those circumstances. It was not necessary to engage in plain error review in deciding the issue.

"The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, supra, 86 Conn. App. 846–47.[6] Whether the plaintiff has made out a prima facie case is a question of law, over which our review is plenary. *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 456, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002).

A review of the evidence admitted is necessary to determine whether the plaintiffs' evidence "met the relatively low standard . . . necessary to withstand the defendants' [Practice Book § 15-8] motion." (Citation omitted; internal quotation marks omitted.) *Falker* v. *Samperi*, 190 Conn. 412, 420, 461 A.2d 681 (1983). We

---

[6] A court's denial of a motion to dismiss does not mean that the plaintiff is entitled to a judgment in its favor, even if the defendant does not submit any evidence. The effect of denying the motion gives the plaintiff the opportunity to have the fact finder pass on the merits of the case. "Once a case is ultimately presented to the factfinder for final decision, an entirely different analysis is applied. Rather than being required to take as true the evidence offered by the plaintiff, the trier of fact can disbelieve any evidence, even if uncontradicted." *Berchtold* v. *Maggi*, 191 Conn. 266, 272, 464 A.2d 1 (1983).

must compare the evidence with the allegations of the complaint. The complaint alleged that (1) the parties own adjoining lots, (2) the plaintiffs' lot is uphill from the defendants' lot, (3) both lots have a view of Long Island Sound, (4) the plaintiffs' lot is benefited by the restrictions referenced in footnote 3, (5) the defendants' lot is subject to those restrictions, and (6) the defendants have violated and continue to be in violation of those restrictions, thereby obstructing the plaintiffs' view of Long Island Sound.

The deeds, aerial maps, admissions to various allegations of the plaintiffs in the defendants' answer and testimony of the witnesses at trial clearly provided sufficient evidence to withstand a motion to dismiss as to ownership, location of the properties, the benefit and burden of the restrictions on the plaintiffs' lot and the defendants' lot, respectively, and the obstruction of the plaintiffs' view of Long Island Sound. The dispositive issue therefore is whether sufficient evidence was presented to establish a prima facie case as to the violation of those restrictions by the defendants.

In its decision, the court focused on the language of the restrictions and the difficulty of proving a violation of those restrictions. The court noted that the restrictions were unclear and poorly drafted. The restrictions involve the height of trees, bushes and shrubs in different view corridors in the restricted area, and include the possibility that certain trees, bushes and shrubs could be planted in substitution for trees, bushes and shrubs existing in 1951. Given the difficulty in proving the date that each planting was in existence and which plantings were substituted for previously existing plantings, the court concluded that the evidence admitted was insufficient to demonstrate a violation of those restrictions.

In considering the evidence submitted, the court was obligated to construe the language of the restrictions

in accordance with applicable case law. "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . [I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Citation omitted; internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780–81, 687 A.2d 1270 (1997).

Construing the restrictions at issue, in light of the relevant principles of law, the evidence presented by the plaintiffs permitted the inference that the purpose of the planting restrictions was to protect their lot's view of Long Island Sound from obstruction by the uncontrolled growth of trees, bushes and shrubs.[7] Further, the testimony of the witnesses and the exhibits

---

[7] The case of *Weeks* v. *Kramer*, 45 Conn. App. 319, 696 A.2d 361 (1997), appeal dismissed, 244 Conn. 203, 707 A.2d 30 (1998), involved similar, but not identical, restrictions on other lots in the Bluewater Hill subdivision. In that case, this court stated: "Although the defendants' deed may represent an inartful way of accomplishing the purpose of protecting the higher lots' view from interference by the growth of plant life and structures on the lower lots, we find that this purpose is obvious and clear." Id., 323. The court in the present case also noted that the restrictions were "poorly drafted . . . ." Nevertheless, it is obvious and clear that the purpose of restricting plant growth on the defendants' downhill lot was to protect the plaintiffs' uphill lot's view of Long Island Sound.

submitted permitted the inference that trees and other plantings in excess of the height allowed by the restrictions were growing in the restricted area and obstructing the plaintiffs' view. The aerial maps, showing the plant growth in 1934, 1958, 1975 and 1990, permitted the inference that the plant life was growing at a particular rate and that substantial growth in excess of the permitted height has taken place since the restrictions were recorded.[8] Even though each tree in the restricted area was not accounted for, the court was presented with sufficient, probative evidence at this stage of the proceedings to establish a violation of the planting restrictions by the defendants. The plaintiffs submitted sufficient evidence to make out a prima facie case, and the court improperly granted the defendants' motion to dismiss pursuant to Practice Book § 15-8.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

[8] The plaintiffs attempted to introduce the report of the defendants' expert with respect to the core borings of trees in the restricted area, which would be indicative of the age of those trees. The plaintiffs' counsel indicated to the court that the plaintiffs had agreed not to conduct their own tests on the defendants' trees because the defendants already had an expert who was going to perform those tests. The defendants objected to the admission of that report on the ground that their expert was not present at that time to authenticate the report. The court sustained the objection.